IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE: CRIMINAL COMPLAINT AGAINST SCOTT DYER AND R. 41 PREMISES SEARCH WARRANT | No. 3:26-mj- _______ (MEG) |

**MASTER AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AGAINST SOTT DYER AND RULE 41 SEARCH WARRANT**

I, Benjamin X. Farrell, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION**

1. This affidavit relates to an ongoing investigation into SCOTT DYER (YOB 1990) regarding online threats made on the social media platform YouTube.

2. I make this affidavit in support of a criminal complaint and an application under Rule 41 of the Federal Rules of Criminal Procedure for search warrant for items that constitute contraband, evidence, fruits, and instrumentalities of 18 U.S.C. § 875(c) (Interstate Threats), (the "TARGET OFFENSE").

3. Specifically, I make this affidavit in support of a criminal complaint and arrest warrant for DYER's person, and further, in support of an application for a search warrant to search the residence of DYER, the TARGET PREMISES located in Naugatuck, Connecticut, and his person, and his personal effects, as more particularly described in Attachment A, for contraband, evidence, fruits, and instrumentalities of the TARGET OFFENSE, as further described in Attachment B.

**AGENT BACKGROUND**

4. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since October 2024. I graduated from the FBI Training Academy in Quantico, Virginia,

where I received training in counterterrorism, white-collar crime, cybercrime, interviewing and interrogation techniques, evidence collection, intelligence analysis, and legal matters, among other topics. My service as an FBI Special Agent includes work on a squad specializing in domestic terrorism and weapons of mass destruction. I have participated in criminal and terrorism investigations, which has involved participating in the execution of search and arrest warrants, conducting physical surveillance, analyzing records related to terrorism and other offenses, and interviewing and interrogating both witnesses and criminal suspects. I am presently assigned to the FBI New Haven Field Office, where I serve on the Joint Terrorism Task Force.

5. The statements contained in this affidavit are based in part on information provided by other members of local and federal law enforcement, my own investigation to include personal observations, documents and other investigative materials which I have reviewed, as well as my training and experience as a Special Agent with the FBI. This affidavit contains only those facts necessary to establish probable cause for the requested warrants, and does not include every fact known to me or the FBI as part of this investigation.

**PROBABLE CAUSE**

6. On October 13, 2026, FBI New Haven Field Office was made aware of a threat to life report initially received by the National Threat Operations Section (NTOS). NTOS received a voluntary emergency disclosure of information from Google LLC regarding account activity on YouTube by SCOTT DYER.

7. According to information provided by Google LLC, between October 5 and 9, 2026, DYER authored several comments on several posts on YouTube. YouTube is an online video streaming platform, which relies on the internet. Google LLC (the owner of YouTube) is

headquartered in California and that according to its public website, it has no data centers in Connecticut.

8. The following are examples of those comments and are not inclusive of all YouTube comments provided by Google LLC:

a. On October 8, 2026 at 7:15 PM EDT, DYER commented: "I'm prepared to kill Republicans. Eager to do it actually. I already have targets in my local community selected."

b. On October 8, 2026 at 7:18 PM EDT, DYER commented: "I have spent the last few years compiling lists of houses that displayed Trump signs or had cars with Trump bumper stickers. I have hundreds of people in an excel spreadsheet with as much info on them as I could get. I've been stockpiling hollow points and have some custom made drones with some… 'neat' features. Can't wait for November. Gonna make a lot of people pay and I only accept Republican blood."

c. On October 9, 2026 at 1:51 AM EDT, DYER commented: "The only public execution I'd like to witness and actively participate in is [redacted]. What a vile [redacted] I have a lot of hollow points[1] with [redacted] name on if we ever get the chance to meet."

d. On October 9, 2026 at 1:52 AM EDT, DYER commented: "I will head to the capitol tomorrow to assassinate [redacted]

e. On October 9, 2026 at 4:14 PM EDT, DYER commented: "They should be careful, they might just get it. I've been stockpiling guns, ammo, the precursors for synthesizing explosives, food, water, fuel... I will have no problem bringing the

[1] I know based on my training and experience that "hollow points" are a type of bullets.

fight to them and if they think they'll be able so beg for mercy and surrender they got another thing coming to 'em. Should've got rid of every last one of them after the War of Southern Aggression. We will not grant them mercy a second time."

9. In the same voluntary disclosure, Google LLC provided the following subscriber information for the account:

a. Name: Scott Dyer

b. Email Address: valigarmanda1@gmail.com

c. Recovery phone number ending in -8631

d. Birthday: [Redacted], 1990

10. The voluntary disclosure included a connected Google Wallet account, with a billing address in Naugatuck. Note that this address is not the same as for the TARGET PREMISES; investigators believe, based on DMV records and an Exigent Ping Request (EPR) to Verizon for DYER's phone number ending in -8631, that the Google Wallet address was an old address and that DYER instead currently lives at the TARGET PREMISES.

11. The voluntary disclosure also reflected that DYER's Youtube account frequently used IP address 32.217.5.20 between August 31, 2026 and October 12, 2026, including, specifically, on October 8, when DYER made some of the threatening comments summarized above.

12. On October 13, 2026, FBI served an emergency disclosure request to Google LLC for email address valigarmada1@gmail.com. Google LLC provided records in response confirming the subscriber information previously disclosed, as well as two Android device data associated with the account: one Samsung IMEI 354626193381476 and one Motorola IMEI 353106180960856.

13. Google LLC again provided a recovery phone number on the account ending in -8631 and a last seen Internet Protocol (IP) address of 32.217.5.20 on October 12, 2026 at 13:02:17.

14. On October 13, 2026, FBI served an emergency disclosure request to Frontier Communications for IP address 32.217.5.20. On that same day, Frontier Communications provided the following information:

a. Customer Name: Scott Dyer

b. Account Address: TARGET PREMISES [exact address known to me and specified in Attachment A], Naugatuck, Connecticut

15. Also on October 13, 2026, Naugatuck Police Department submitted an Exigent Ping Request (EPR) to Verizon for phone number ending in -8631, belonging to DYER. The phone was observed on that date to be within the radius of Dyer's known residence, the TARGET PREMISES in Naugatuck, Connecticut.

16. According to DMV records, the TARGET PREMISES is DYER's current residence. Publicly available sources show that the TARGET PREMISES show that the apartment has skylights and slanted ceilings, indicating that the TARGET PREMISES is located on the top floor.

17. Also on October 13, 2026, Naugatuck Police Department conducted surveillance in the area of the TARGET PREMISES and observed a vehicle registered to DYER, a blue 2016 Mazda 6 bearing Connecticut registration number [redacted], enter the driveway of the TARGET PREMISES. At that time, Naugatuck Police Department observed a sole male occupant exit the vehicle and enter the [redacted] of the TARGET PREMISES. The officer reported that the sole male operator of the vehicle matched the physical description of DYER.

18. Also on October 13, 2026, at approximately 9:15 PM, members of FBI New Haven conducted surveillance at the same address. FBI observed the vehicle parked at the rear of the building and all lights on at the house. FBI New Haven has conducted constant surveillance of the residence overnight.

## CONCLUSION

19. Based upon the foregoing, there is probable cause to believe, and I do believe, that DYER has violated 18 U.S.C. 875(c) by knowingly and willfully transmitting the threats outlined in paragraph 8, *supra*, in interstate commerce.

20. Furthermore, there is probable cause to believe, and I do believe that evidence of the TARGET OFFENSE, contraband, fruits, or other items illegally possessed, and property designed for use, intended for use, or used in committing crimes, are likely to be found in the TARGET PREMISES.

21. I request that the Court approve and issue the requested Criminal Complaint, the accompanying application under Rule 41 for a search warrant for DYER'S residence (*i.e.*, the TARGET PREMISES), person, and his personal effects, as more particularly described in Attachment A, for electronic devices and any other contraband and evidence, fruits, and instrumentalities of violations of the TARGET OFFENSE as further described in Attachment B.

Respectfully submitted,

BENJAMIN FARRELL
Digitally signed by BENJAMIN FARRELL
Date: 2026.10.14 09:24:55 -04'00'

Special Agent Benjamin X. Farrell
Federal Bureau of Investigation

Subscribed and sworn to me by Phone this 14 day of October, 2026 at New Haven, Connecticut, pursuant to Rule 4.1.

Maria E. Garcia
Digitally signed by Maria E. Garcia
Date: 2026.10.14 09:53:33 -04'00'

Hon. Maria E. Garcia
U.S. Magistrate Judge

# ATTACHMENT A

**Premises to Be Searched (the "TARGET PREMISES")**

The TARGET PREMISES is located at [redacted] Naugatuck, Connecticut, which is particularly described as the [redacted] apartment of a multi-family residence. The residence itself is multiple floors with a stone and concrete foundation. The specific location to be searched is the [redacted] apartment of SCOTT DYER, which is believed to be accessed from the [redacted] door at the front of the structure. There are stairs leading from the sidewalk to a concrete landing, another set of stairs lead from the landing to the patio and first floor front door. The residence is located between [redacted] in Naugatuck.

The scope of the search is to encompass the entire premises, including all rooms and containers contained therein, including but not limited to: desks, draws, file cabinets, safes, boxes, briefcases, receptables, or any other storage container or facilities within the TARGET PREMISES.

The following photograph is an accurate depiction of the TARGET PREMISES.

[redacted]

## ATTACHMENT B

***Section I: Particular Things to be Seized***

The particular items to be seized shall consist of all evidence, contraband, fruits or instrumentalities relating to violations of 18 U.S.C. § 875(c) (Interstate Threats) committed by SCOTT DYER, for the period September 1, 2026 to the present, including but not limited to:

a. Firearms or components thereof, ammunition, the precursors for synthesizing explosives and firearms, and drones;

b. Evidence concerning occupancy or ownership of the Target Premises, including without limitation, utility and telephone bills, mail envelopes, addressed correspondence, diaries, statements, identification documents, address books, telephone directories, and keys;

c. Identification documents and keys evidencing a possessory interest in premises, vehicles and storage containers;

d. Evidence concerning the ownership and control of the valigarmanda1@gmail.com email account;

e. Any and all records and information relating to any victims of the above-described TARGET OFFENSE, including lists, in whatever form, of community members and politicians in the Naugatuck community;

f. Any and all records, including phone logs, notes, ledgers, lists, logs, notebooks, tallies, receipts, correspondence, text messages, electronic mail, chat logs, and other communications or documents, related to the violation of the TARGET OFFENSE;

g. Records and information related to the identity or location of SCOTT DYER and/or victims of the TARGET OFFENSE;

h. Any and all currency in excess of $500.00;

i. Documents, records, and tangible items showing an intention to travel to Washington, D.C. or to other out-of-state locations, including, but not limited to stockpiles of food, bottled water, fuel, and packed travel bags;

j. Any computer equipment or digital devices that are capable of being used to commit or further the crimes referenced above, or to create, access, or store evidence, contraband, fruits, or instrumentalities of such crimes, including central processing units; laptop or notebook computers; personal digital assistants; wireless communication devices including paging devices and cellular telephones; peripheral input/output devices such as keyboards, printers,

scanners, plotters, monitors, and drives intended for removable media; related communication devices such as modems, routers, cables, and connections; storage media; and security devices;

k. Any magnetic, electronic, or optical storage device capable of storing data, such as floppy disks, hard disks, tapes, CD-ROMs, CD-Rs, CD-RWs, DVDs, optical disks, printer or memory buffers, smart cards, PC cards, memory calculators, electronic dialers, electronic notebooks, personal digital assistants, and cell phones capable of being used to commit or further the crimes referenced above, or to create, access, or store evidence, contraband, fruits, or instrumentalities of such crimes;

l. Any computer equipment or digital devices used to facilitate the transmission, creation, display, encoding, or storage of data, including word processing, equipment, modems, docking stations, monitors, printers, plotters, encryption devices, and optical scanners that are capable of being used to commit or further the crimes referenced above, or to create, access, process, or store evidence, contraband, fruits, or instrumentalities of such crimes;

m. All passwords, passphrases, encryption keys, encryption dongles, and/or any information, including tools, records, and techniques used to activate and/or navigate and access in plain-text data stored in encrypted data systems, encrypted filesystems, encrypted files, and encrypted records or documents; and

n. All records, documents, programs, applications, or materials created, modified, or stored in any form, including in digital form, on any computer or digital device, that show the actual user(s) of the computers or digital devices during the time the device was used to commit the crimes referenced above, including the web browser's history; temporary Internet files; cookies, bookmarked, or favorite web pages; email addresses used from the computer; MAC IDs and/or Internet Protocol addresses used by the computer; email, instant messages, and other electronic communications; address books; contact lists; records of social networking and online service usage; and software that would allow others to control the digital device such as viruses, Trojan horses, and other forms of malicious software

***Section II: Search and Seizure of Electronically Stored Information***

The items to be seized from the Target Premises also include any cell phones, computer devices, and storage media that may contain any electronically stored information falling within the categories set forth above, including, but not limited to, desktop and laptop computers, disk drives, modems, thumb drives, personal digital assistants, smart phones, digital cameras, and scanners.

In lieu of seizing any such computer devices or storage media, this warrant also authorizes the copying of such devices or media for later review.

o. The items to be seized from the Target Premises also include:

1. Any items or records needed to access the data stored on any seized or copied computer devices or storage media, including but not limited to any physical keys, encryption devices, or records of login credentials, passwords, private encryption keys, or similar information.

2. Any items or records that may facilitate a forensic examination of the computer devices or storage media, including any hardware or software manuals or other information concerning the configuration of the seized or copied computer devices or storage media.

3. Any evidence concerning the identities or locations of those persons with access to, control over, or ownership of the seized or copied computer devices or storage media.

***Section III: Review of ESI***

a. Following seizure of any computer devices and storage media and/or the creation of forensic image copies, law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the ESI contained therein for information responsive to the warrant. In conducting this review, law enforcement personnel may use various techniques to locate information responsive to the warrant, including:

1. Surveying various file “directories” and the individual files they contain (analogous to looking at the outside of a file cabinet for the markings it contains and opening a drawer believed to contain pertinent files);

2. opening or cursorily reading the first few “pages” of such files in order to determine their precise contents;

3. scanning storage areas to discover and possibly recover recently deleted files or deliberately hidden files;

4. performing key word searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are intimately related to the subject matter of the investigation; and

5. reviewing metadata, system information, configuration files, registry data, and any other information reflecting how, when, and by whom the computer was used.

Law enforcement personnel will make reasonable efforts to search only for files, documents, or other electronically stored information within the categories identified in this Attachment, however, law enforcement personnel are authorized to conduct a complete review of all the ESI from seized devices or storage media if necessary to evaluate its contents and to locate all data responsive to the warrant.